**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

UNITED STATES OF AMERICA,

v.                                                                    CASE NO.:    11-CR-20474-BB

RODGER GONZALEZ, JR.,

      Defendant.
_____/

**MOTION TO REDUCE SENTENCE**
**PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Rodger Gonzalez, Jr., respectfully requests that the Court enter an Order granting him compassionate release under 18 U.S.C. § 3582(c)(1)(A) and reducing his sentence to time served based on extraordinary and compelling circumstances. Mr. Gonzalez is presently serving a 327-month sentence following his guilty plea to a firearm possession charge. He has served over twelve years of incarceration with an exemplary disciplinary record.

Mr. Gonzalez should be granted compassionate release due to his family circumstances, and specifically, the incapacitation of Mr. Gonzalez's stepfather, for whom Mr. Gonzalez is the only available caregiver. These circumstances, in combination with Mr. Gonzalez's rehabilitation and the harsh conditions under which Mr. Gonzalez has been incarcerated, are "extraordinary and compelling." For these reasons, and because Mr. Gonzalez is not a danger to the community and his release would be consistent with the sentencing factors set forth under 18 U.S.C. Section 3553(a), the Court should grant this motion and reduce Mr. Gonzalez's sentence to time served. The grounds supporting this motion are set forth in the following Memorandum.

**MEMORANDUM**

**I.     Background**

    **A.     Mr. Gonzalez's Offense**

The offense of which Mr. Gonzalez was convicted took place shortly after Mr. Gonzalez had reunited with his father, Roger Valdez, Sr.  When Mr. Gonzalez was only nine years old, his father went to prison for participating in a home invasion robbery.  After Mr. Valdez was released from prison in 2010, Mr. Gonzalez sought to reconnect with the father who had been out of his life for twenty-three years.  Unfortunately, Mr. Gonzalez's estranged father returned to his prior patterns after his release from prison.  During a three-month time period in 2011, Mr. Valdez organized, planned, and led several home invasion robberies of houses used for drug operations, or "stash houses."  Mr. Valdez recruited the son, whose life he had just returned to, and who yearned to connect with him, to drive him to the robberies.

In late June 2011, a confidential source provided Mr. Valdez information about what was described as a marijuana stash house in Miami, Florida.  Mr. Valdez planned and organized a robbery of the purported stash house, which was in actuality a "reverse sting"[1] operation.  On June 30, 2011, Mr. Gonzalez drove his father and three of his father's confederates to the location of the purported stash house.  After Mr. Valdez and the three men approached the stash house, their plan went awry.  Law enforcement officers who were stationed at the location confronted the robbery team and ultimately shot and killed all four of them, including Mr. Gonzalez's father.  Mr. Gonzalez's involvement was limited to driving.  He remained in the car throughout the incident, was not involved in the confrontation with law enforcement, and did not engage in any violence

---

[1] The use of such "reverse sting" tactics has been widely criticized, *see*, *e.g.*, *United States v. Sellers*, 906 F.3d 848, 856 (9th Cir. 2018) (Nguyen, J., concurring); *United States v. Black*, 733 F.3d 294, 303 (9th Cir. 2013); *United States v. Lewis*, 641 F.3d 773, 777 (7th Cir. 2011); *United States v. Lopez*, 415 F. Supp. 3d 422, 425–26 (S.D.N.Y. 2019).

or threats of violence. Although Mr. Gonzalez's father and his father's confederates had firearms, Mr. Gonzalez did not himself personally possess a firearm during this incident, or indeed at any time.

Mr. Gonzalez was placed under arrest without incident on the date of the robbery sting operation, June 30, 2011, and he has been in custody since that date.

### B.      Procedural History

Mr. Gonzalez was indicted shortly after his arrest. Doc. 9. He was detained without bond. Doc. 13. On August 19, 2011, a Superseding Indictment was returned that alleged, among other counts, the following: Count One: Conspiracy to possess with intent to distribute a controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1), 846; Count Two: Attempt to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846; Count Three: Conspiracy to obstruct, delay, and affect commerce by means of robbery, in violation of 18 U.S.C. § 1951(a) ("Hobbs Act Conspiracy"); Count Four: Attempt to obstruct, delay, and affect commerce by means of robbery, in violation of 18 U.S.C. §§ 1951(a), 2 ("Hobbs Act Attempt"); Count Five: Knowingly carrying a firearm during and in relation to a crime of violence and drug trafficking crime "as set forth in Count 1, 2, 3, and 4 of this Superseding Indictment," in violation of 18 U.S.C. § 924(c). Doc. 19.

Mr. Gonzalez took responsibility for his conduct. He entered into a plea agreement under which he agreed to plead guilty to Count Five of the Superseding Indictment, which alleged an offense under 18 U.S.C. Section 924(c)(1)(A), of possessing a firearm in furtherance of a crime of violence and a drug trafficking crime. Doc. 31 at 1. Mr. Gonzalez agreed to cooperate with the United States Attorney's Office. *Id.* at 5. The parties stipulated in the plea agreement that the

3

applicable range under the United States Sentencing Guidelines was 262-327 months, and that Mr. Gonzalez would be sentenced to the high end of that range, 327 months. *Id.* at 4.

Although Mr. Gonzalez cooperated with the government to the best of his ability, his cooperation did not result in a government motion to reduce his sentence for substantial assistance. Accordingly, on April 13, 2012, Mr. Gonzalez was sentenced by the Court in accordance with his plea agreement to a term of 327 months (27 years, 3 months). Doc. 34.

In 2014, Mr. Gonzalez filed a motion to vacate his sentence under 28 U.S.C. Section 2255, which was denied. Doc. 39; Doc. 47.

Mr. Gonzalez later sought and received permission from the United States Court of Appeals for the Eleventh Circuit to file a second or successive motion to vacate. Doc. 71. In July 2017, Mr. Gonzalez filed an Amended Motion to Vacate. Case No. 1:17-cv-21822-UU, Doc. 15. As Mr. Gonzalez explained in the Amended Motion to Vacate, the count to which Mr. Gonzalez pled guilty alleged that he had possessed a firearm in furtherance of the offenses set forth in the first four counts of the Superseding Indictment, specifically, Conspiracy to Possess with Intent to Distribute Marijuana, Attempted Possession with Intent to Distribute Marijuana, Hobbs Act Robbery, and Attempted Hobbs Act Robbery. The Amended Motion to Vacate argued that, pursuant to the United States Supreme Court's opinion in *Johnson v. United States*, 576 U.S. 591 (2015), none of the offenses on which Mr. Gonzalez's Section 924(c) conviction were based constituted "crimes of violence." In *Johnson*, the Supreme Court had held that the residual clause of the Armed Career Criminal Act's definition of "violent felony" was unconstitutionally vague. Mr. Gonzalez explained that the same logic applied to the residual clause in Section 924(c)'s definition of "crime of violence." Case No. 1:17-cv-21822-UU, Doc. 15 at 7-9.

4

While Mr. Gonzalez's Amended Motion to Vacate was pending, the United States Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019).  Just as Mr. Gonzalez had argued, the Supreme Court held that Section 924(c)'s residual clause was impermissibly vague.  *Id.* at 2325-33.  Following *Davis*, it is clear that Mr. Gonzalez's conviction cannot be predicated on a "crime of violence."  Nonetheless, the Court denied Mr. Gonzalez's Amended Motion to Vacate, holding that his conviction under Section 924(c) remains valid because the possession of a firearm was in relation to a "drug trafficking crime."  Doc. 89.

Mr. Gonzalez's offense is thus, both legally and factually, not predicated on a crime of violence.  It was instead his possession of a firearm in connection with a drug trafficking offense, in which Mr. Gonzalez never personally used or displayed a firearm or used or threatened any violence.  Mr. Gonzalez's involvement in that offense was limited to serving as a driver for his long-estranged father.

### C. Mr. Gonzalez's family situation

Throughout Mr. Gonzalez's incarceration, his family has continued to be supportive of him, and he has remained in close contact with him.  Mr. Gonzalez has a close relationship with his mother, Maria Heflin-El; stepfather, Edward Heflin-El; sister, Jessenia Gonzalez; and daughter, Juliet Gonzalez.

Mr. and Mrs. Heflin-El own a company in Miami, Florida, that employs over 100 employees.  However, Mr. Heflin-El has been forced to retire due to his disabling illnesses.

In recent years, the medical condition of Mr. Gonzalez's stepfather has significantly deteriorated.  Mr. Heflin-El's medical records have been filed under seal as Exhibit A to this motion.  As these records demonstrate, Mr. Heflin-El has diabetes, congestive heart failure, and kidney disease, as well as multiple other health disorders.  Mr. Helfin-El is now in end-stage kidney

failure. In April 2023, he started dialysis. He is on a waiting list for a kidney transplant. As is discussed in more detail below, due to the incapacitating medical issues of Mr. Gonzalez's stepfather, he requires a great deal of assistance with many tasks of daily living, medical care, and his numerous medical appointments.

Mr. Gonzalez wants to be there to care for and support his stepfather, his mother, and the rest of his family through the difficult times that are ahead of them.

### D. Mr. Gonzalez's rehabilitation

In the intervening twelve years since his conviction, Mr. Gonzalez has demonstrated his rehabilitation. Mr. Gonzalez has used his time in prison to improve himself. He earned his GED while in prison, and he has taken a number of educational and re-entry classes. He completed the BOP's drug education class. Notably, Mr. Gonzalez has had an exemplary disciplinary record while in prison. He has never had even a single disciplinary incident.

Mr. Gonzalez has also received job training while in prison and has participated in the Unicor program. Mr. Gonzalez is head of a line that is responsible for all the Navy parkas being produced at the Unicor facility. A recent Unicor evaluation is attached as Exhibit E. It shows that Mr. Gonzalez has performed exceptionally well, receiving top ratings in every category.

## II. The Court should grant Mr. Gonzalez compassionate release.

It is respectfully requested that the Court exercise its authority to grant Mr. Gonzalez compassionate release. The Court has jurisdiction to hear Mr. Gonzalez's motion and may reduce his sentence if it determines extraordinary and compelling circumstances exist here. Because this case presents extraordinary and compelling circumstances due to Mr. Gonzalez's family situation, his rehabilitation, and the harshness of the conditions in which he has been incarcerated, the Court

6

should determine that extraordinary and compelling circumstances exist and reduce Mr. Gonzalez's sentence to time served.

### A.     The Court has jurisdiction to consider this compassionate release motion.

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court has jurisdiction to determine whether "extraordinary and compelling reasons" warrant a sentence reduction after consideration of sentencing factors under 18 U.S.C. § 3553(a) and the Sentencing Commission's policy statement on reduction of sentence in U.S.S.G. § 1B1.13.  While previously a motion for compassionate release could be brought only by the Director of the BOP, Section 603(b) of the First Step Act amended Section 3582(c)(1)(A) to permit the filing of a compassionate release motion by the defendant.  As amended, the compassionate release statute provides district courts with jurisdiction to modify a term of imprisonment for compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days* from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A)[2] (emphasis added).

---

[2] As amended, the pertinent part of 18 U.S.C. § 3582(c) now reads:

> **(c) Modification of an Imposed Term of Imprisonment –** The court may not modify a term of imprisonment once it has been imposed except that —
>
> **(1)** in any case —
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —

Mr. Gonzalez submitted a request for compassionate release to the Warden of his institution on June 28, 2023. He has not received a response. The Court therefore has jurisdiction to decide Mr. Gonzalez's motion.

### B. Extraordinary and compelling reasons support a sentence reduction for Mr. Gonzalez.

Section 3582(c)(A)(i) provides that the Court may reduce a sentence upon a finding that "extraordinary and compelling reasons warrant such a reduction," if the Court finds that the reduction is consistent with the United States Sentencing Commission's applicable policy statements, and after considering the factors set forth in 18 U.S.C. Section 3553(a). Congress specifically directed the Sentencing Commission to promulgate a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The resulting Policy Statement is found at U.S.S.G. Section 1B1.13. The United States Sentencing Commission recently promulgated a substantially revised version of Section 1B1.13, which took effect on November 1, 2023.

Several circumstances that are "extraordinary and compelling" within the meaning of Section 1B1.13 exist in Mr. Gonzalez's case. As described below, these include the need of Mr. Gonzalez's family for him to serve as a caregiver to his incapacitated stepfather, his rehabilitation, and the difficult conditions of his incarceration.

---

(**i**) extraordinary and compelling reasons warrant such a reduction...

8

### 1. Mr. Gonzalez's family circumstances

The new version of the Sentencing Commission's compassionate release Policy Statement took effect on November 1, 2023. The newly-revised Section 1B1.13 identifies several specific circumstances that present "extraordinary and compelling reasons" for a sentence reduction. As applicable here, Section 1B1.13(b)(3) provides that the following "family circumstances" may be "extraordinary and compelling" and thus support compassionate release:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> *(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.*
>
> (D) The defendant establishes that *circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving* any other immediate family member or *an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual*. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(Emphasis added).

Here, the incapacitated family member is Mr. Gonzalez's stepfather, whose relationship to Mr. Gonzalez is "similar in kind" to that of a parent. Mr. Heflin-El suffers from multiple serious medical conditions, including congestive heart failure and end-stage kidney disease, that have left him unable to independently take care of himself and in need of a care provider. *See* Sealed Ex. A. Mr. Heflin-El has been determined by the Veterans Affairs Administration to be "100% disabled." *See id.* at 3.

A letter from Mr. Heflin-El is attached to this motion as Exhibit B. As Mr. Gonzalez's stepfather explains, his illness has left him severely disabled. Walking even a short distance leaves Mr. Heflin-El breathless and tachycardic. *See id.* He is losing vision in both of his eyes. *See id.* He has medical appointments two to three times per week, and he takes seventeen medications on a daily basis. *See id.* Mr. Heflin-El must self-administer peritoneal dialysis for eight to nine hours every night. *See id.*

Mr. Heflin-El is constantly fatigued. Ex. B. He has had episodes in which he has gotten dizzy or lost consciousness and has fallen as a result. *See id.* Because of this, it is not safe to leave him alone. *See id.* Mr. Heflin-El has also started noticing memory lapses. *See id.*

Due to all of these issues, Mr. Heflin-El requires a high degree of care that his wife, Mr. Gonzalez's mother, is unable to provide. A letter from Mr. Gonzalez's mother is attached to this motion as Exhibit C. Mrs. Heflin-El herself has serious medical issues, including fibromyalgia and gastritis. Ex. C. Additionally, two bouts of COVID have left her debilitated. *See id.* As a result, she is not able to provide the care that her husband needs, and she herself needs assistance. *See id.*

If Mr. Gonzalez were released, he would be able to assist Mr. and Mrs. Heflin-El with their medical care at home, including the management of their numerous medications and supplies; drive them to their frequent medical appointments; provide the personal care that his stepfather needs; prepare the specialized foods that his mother and stepfather need to manage their conditions; and run errands for them. Mr. Gonzalez would also be able to assist Mr. and Mrs. Heflin-El with their business and to handle household chores and home maintenance, which are becoming increasingly difficult or impossible for them to do.

While Mr. Gonzalez's other family members would like to be able to assist with Mr. Heflin-El's care, none of them is available to do so on a regular basis. Letters from Mr. Gonzalez's sister Jessenia, daughter Juliet, and stepsister Dominique Heflin are attached as composite Exhibit D. Mr. Gonzalez's sister lives an hour away from her mother and stepfather and has a four-year-old son with special needs. *See id.* Likewise, Mr. Gonzalez's stepsister has been assisting with her father's care as much as possible, but herself has a husband and four school-age sons, and she is not able to provide the level of caregiving that her father now needs. *See id.* Mr. Gonzalez's daughter Juliet lives far from her grandparents' home, is in college, and also works. *See id.* Additionally, as Juliet describes, Mr. Gonzalez has caregiving experience, having cared for his grandmother at the end of her life. *See id.* She describes her father as patient, gentle, and attentive. *See id.*

Mr. Gonzalez has also offered to be a kidney donor for his stepfather, which is the best chance Mr. Heflin-El has for a return to a somewhat more normal life. It is not known whether Mr. Gonzalez will be an adequate match to make this dream possible, but if Mr. Gonzalez has the opportunity to do so, he wishes to take this extraordinary step to improve the lives of his stepfather and his mother.

### 2. Mr. Gonzalez's rehabilitation

The compassionate release Policy Statement also addresses the role of a defendant's rehabilitation in considering a compassionate release motion. Specifically, Section 1B1.13(d) provides that while a defendant's rehabilitation "is not, by itself, an extraordinary and compelling reason for purposes of" a compassionate release motion, the defendant's post-offense rehabilitation "may be considered in combination with other circumstances in determining whether

and to what extent a reduction in the defendant's term of imprisonment is warranted." Here, Mr. Gonzalez has demonstrated his rehabilitation in the time he has been incarcerated.

Mr. Gonzalez has used every opportunity available to him to improve himself while he has been in prison. He has obtained his GED, participated in educational programming, and taken part in every rehabilitative program that has been made available to him, including the BOP's non-residential drug education class. He is presently enrolled in several classes. He has received outstanding feedback in his leadership role in the Unicor work program. *See* Ex. C. Remarkably, he has not had a single disciplinary infraction in the entire time he has been incarcerated. The BOP has classified Mr. Gonzalez as being at "Low" risk of recidivism.

Although the Court cannot grant compassionate release based solely on Mr. Gonzalez's rehabilitation, the Court can and should consider it in determining whether to reduce Mr. Gonzalez's sentence to time served. Additionally, as is discussed in detail below, Mr. Gonzalez's rehabilitation is one of multiple factors that show that the purposes of sentencing have been accomplished here, and that Mr. Gonzalez is not a danger to the community.

### 3. Mr. Gonzalez experienced harsh conditions of confinement.

In deciding this motion, the Court should take into account the additional factor that Mr. Gonzalez has experienced harsher conditions of confinement than the Court could have anticipated at the time it sentenced him. The newly-revised Section 1B1.13 provides in subparagraph (b)(5) that a court may find that "extraordinary and compelling reasons" exist for "other reasons" than those specifically identified in the policy statement if "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in" Section 1B1.13(b) "are similar in gravity to" the other reasons

described in Section 1B1.13(b). The conditions of Mr. Gonzalez's incarceration are such an "other reason."

The Court could not have anticipated at the time it sentenced Mr. Gonzalez the onerous conditions of confinement he would be subjected to. As a result of the COVID-19 pandemic and the steps the BOP took to prevent the spread of illness, conditions in federal prisons dramatically worsened. As the court in *United States v. Robles* explained:

> [T]he pandemic has subjected all inmates to far more restrictive conditions of confinement than normal incarceration. It has limited inmates' access to visitors such as family, to counsel, and to rehabilitative, therapeutic, and recreational programs. And it has given rise to fears of infection and worse by inmates. In these respects, the pandemic has spawned conditions of confinement far more punishing than what could have been expected at the time of [the defendant's] sentencing.

553 F. Supp. 3d 172, 182 (S.D.N.Y. 2021); *see also United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) ("[T]he pandemic, aside from posing a threat to [the defendant's] health, has made [the defendant's] incarceration harsher and more punitive than would otherwise have been the case. This is because the federal prisons, as prime candidates for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal.") (citations and quotations omitted).

Mr. Gonzalez has contracted COVID twice, and experienced severe symptoms both times. The first time Mr. Gonzalez became ill with COVID, he had severe symptoms, including cardiac symptoms, and became tachycardic. As Mr. Gonzalez described his symptoms to counsel, "the first time I contracted COVID, I thought I was going to die in prison without being by my family. Thank God my body fought through it." Mr. Gonzalez's symptoms were worse the second time he contracted COVID; he again experienced tachycardia, as well as body aches, fatigue, and crushing headaches. Mr. Gonzalez has still not fully recovered his sense of taste.

13

Due to the pandemic, Mr. Gonzalez has been incarcerated for lengthy periods of time in much more difficult conditions than BOP inmates were previously subjected to. Mr. Gonzalez also experienced during the pandemic lockdown the worst conditions of confinement that he has been subjected to throughout his time in prison. Mr. Gonzalez described to counsel that his first five years in prison were spent in a United States Penitentiary, and the restrictions he experienced during those five years were far less severe than the conditions during the COVID pandemic. All movement was restricted, and visitation was suspended. Mr. Gonzalez was unable to exercise outside and did not have fresh air or see sunlight throughout the many months of COVID restrictions. Inmates were only allowed to shower every three days, and on several occasions, Mr. Gonzalez went five days without a shower. For months on end, breakfast, lunch, and dinner were boxed meals in his cell, all of it cold. Without access to commissary during this time period, Mr. Gonzalez lost almost twenty-five pounds.

The onerous conditions of confinement Mr. Gonzalez experienced are an additional reason supporting compassionate release here.

***

For these reasons, the Court should find that Mr. Gonzalez has established that extraordinary and compelling circumstances exist in his case.

    **C.    Mr. Gonzalez is not a danger to the community and consideration of the Section 3553(a) factors support release.**

The Court is further required to consider whether Mr. Gonzalez presents a danger to the community and whether compassionate release is consistent with the factors set forth in Section 3553(a). § 1B1.13(a). Mr. Gonzalez presents no danger to the community, and the Section 3553(a) factors weigh in favor of his release.

    **1.    Mr. Gonzalez will not be a danger to the community.**

Upon his release, Mr. Gonzalez will not be a danger to the community, but an asset to it. As described above, Mr. Gonzalez has used his time in prison to improve and rehabilitate himself. He is prepared to make good decisions and become a contributing member of society.

Along with Mr. Gonzalez's excellent conduct for the past twelve years, other factors also demonstrate the lack of risk from Mr. Gonzalez. He is now 43 years old, an age at which empirical research demonstrates a dramatically lower recidivism risk. United States Sentencing Commission, "The Effects of Aging on Recidivism Among Federal Offenders," at 22-24 (December 2017), *available at* https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders. Additionally, Mr. Gonzalez will return home to a supportive environment where he will be surrounded by family that is prepared to assist him in staying on the right path. He will have important responsibilities within his family, and he is highly motivated to continue on his current trajectory.

Further, although Mr. Gonzalez was sentenced as a Career Offender, all of his scorable offenses[3] prior to the offense in this case took place in Mr. Gonzalez's youth, while he was between the ages of 18 and 27. The only one of Mr. Gonzalez's prior offenses that was alleged to involve violence took place in 2004, when Mr. Gonzalez was 25, and resulted from an incident that Mr. Gonzalez did not initiate, but instead went to the aid of his sister because he believed her to be in immediate physical danger.

Finally, as noted above, the BOP itself has classified Mr. Gonzalez as being at "Low" risk of recidivism.

The Court should therefore find that Mr. Gonzalez is not a danger to the community.

---

[3] One unscored offense in 2010 for Driving While License Suspended Unknowingly is noted on Mr. Gonzalez's PSR; however the circumstances for the offense were not available, and the offense was an infraction not scorable for Sentencing Guidelines purposes.

## 2. Mr. Gonzalez's release is consistent with the Section 3553(a) factors.

Reducing Mr. Gonzalez's sentence to time served is also supported by application of the 3553(a) factors to his case. As described in this motion, a reduction of Mr. Gonzalez's sentence is consistent with the Sentencing Commission's Policy Statement on compassionate release, Section 1B1.13. *See* § 3553(a)(5). Each of the remaining Section 3553(a) factors is discussed in turn below.

Mr. Gonzalez's character, *see* § 3553(a)(1), is that of a devoted son, brother, and father, who deeply loves his family and wishes to be there to provide support for them in their time of need. He has taken every step he can to rehabilitate himself.

The offense of conviction in this case, *see* § 3553(a)(1), was the result of Mr. Gonzalez's misguided loyalty to the father who had abandoned him and his family. The scheme was devised by Mr. Gonzalez's father, and Mr. Gonzalez had no leadership role in it. PSR ¶ 15. Mr. Gonzalez has no deeper regret than that he ever went along with his father's awful plan. Further, Mr. Gonzalez's conviction was premised on his involvement in the conspiracy led by his father. His actual conduct was serving as a driver for his father and his father's confederates. Mr. Gonzalez did not personally possess a firearm, commit robbery, or engage in drug trafficking. Finally, as discussed above, and as the Court has determined, Mr. Gonzalez's offense can only be based on possession of a firearm in connection with a drug trafficking crime, and not in connection with a crime of violence. Doc. 89.

The lengthy sentence Mr. Gonzalez has already served in prison accomplishes the purposes of sentencing, *see* § 3553(a)(2)(A), by reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. Mr. Gonzalez has been incarcerated since June 2011, and he has already served over twelve years in prison. With good time credits, Mr. Gonzalez's

current projected release date is September 17, 2034, less than eleven years from now – meaning that Mr. Gonzalez has already served over half of the term of incarceration he was originally sentenced to. Mr. Gonzalez's good conduct in prison demonstrates that no further punishment is needed to promote deterrence or protect the community. *See* § 3553(a)(2)(B), (C). Mr. Gonzalez has taken advantage of every reentry and rehabilitative program available to him, and he has obtained vocational skills. *See* § 3553(a)(2)(D).

With regard to the kinds of sentences available to the Court, *see* § 3553(a)(3), the mandatory minimum sentence for Mr. Gonzalez's offense was five years, which Mr. Gonzalez has already served well in excess of. Further, while for the reasons described above, further punishment of Mr. Gonzalez is not needed, if the Court determines to the contrary, the Court has the discretion to impose special conditions of supervised release to address that, including home confinement. *See*, *e.g.*, *United States v. Delgado*, 457 F. Supp. 3d 85 (D. Conn. 2020); *United States v. Rountree*, 460 F. Supp. 3d 224 (N.D.N.Y. 2020). While such a modification of the terms of Mr. Gonzalez's supervised release does not appear to be necessary here considering Mr. Gonzalez's demonstrated rehabilitation and the lengthy term of imprisonment he has already served, such a modification is available to the Court should the Court deem it necessary to ensure that the purposes of sentencing are effectuated here.

The Sentencing Guidelines range for Mr. Gonzalez's offense, *see* § 3553(a)(4), were determined under the Career Offender guideline, U.S.S.G. Section 4B1.1, to be 262 to 327 months. PSR ¶¶ 19, 20. The time Mr. Gonzalez has served is over two-thirds of the low end of that range, and he has credit for over half of the term of months at the high end of that range that was imposed at sentencing. The prior offenses there were the basis of Mr. Gonzalez being deemed to be a Career Offender, resulting in the dramatic escalation in Mr. Gonzalez's guidelines range, were: (1) a state

17

aggravated battery charge that arose from the occasion where Mr. Gonzalez acted in defense of his sister, PSR ¶ 25; and (2) a state trafficking in cannabis charge, PSR ¶ 28. Mr. Gonzalez had no prior federal charges at the time of this offense.

Granting Mr. Gonzalez a sentence reduction would not introduce unwarranted sentence disparities between him and other similarly-situated defendants. *See* 3553(a)(6). For the most recent year for which statistics are available, Fiscal Year 2022, the mean term of imprisonment for firearms offenders was 52 months, and the median term of imprisonment was 41 months. USSC, 2022 Sourcebook of Sentencing Statistics, Table 15, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/Table15.pdf. Even defendants in Criminal History Category VI who were sentenced for firearms offenses in Fiscal Year 2022 were sentenced to a mean term of imprisonment of 77 months and a median term of imprisonment of 63 months. USSC, 2022 Sourcebook of Sentencing Statistics, Table 28, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/Table28.pdf. Mr. Gonzalez has already served more time in prison than most similarly-situated defendants are sentenced to.

Finally, the need for restitution, *see* 3553(a)(7), in not a factor in this case.

In summary, the Section 3553(a) factors weigh in favor of a reduction of Mr. Gonzalez's sentence.

***

For these reasons, the Court should grant Mr. Gonzalez compassionate release and reduce his sentence to time served.

## CONCLUSION

For the reasons stated above, Mr. Gonzalez respectfully requests that this Court grant a reduction of his sentence to time served and order his immediate release.

        Respectfully submitted,

        */s/ Katherine Earle Yanes*
        Katherine Earle Yanes (FBN 0159727)
        kyanes@kmf-law.com
        KYNES, MARKMAN & FELMAN, P.A.
        Post Office Box 3396
        Tampa, Florida 33601-3396
        Telephone:   (813) 229-1118
        Facsimile:   (813) 221-6750

        *Attorneys for Defendant Rodger Gonzalez*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this Motion was furnished to all counsel of record by the CM/ECF System, on November 2, 2023.

        */s/ Katherine Earle Yanes*
        Katherine Earle Yanes