**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 11-CR-20474-BLOOM/TORRES

UNITED STATES OF AMERICA,

v.

ROGER GONZALEZ, JR.,

    *Defendant.*

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION
TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

This cause comes before the Court upon Defendant Roger Gonzalez Jr.'s Motion Pursuant to 18 U.S.C. § 3582 for a Reduction in Sentence [D.E. 93], to which the Government filed a Response in Opposition to Gonzalez's Motion [D.E. 96], and Defendant Replied [D.E. 100]. Therefore, the Defendant's Motion is now ripe for disposition. The Court has reviewed the Motion, the Opposition, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion should be DENIED.[1]

### I.    BACKGROUND

On June 30, 2011, the Defendant was arrested in connection to an attempted robbery of what the Defendant and his coconspirators thought was a marijuana stash house, but what turned out to be a reverse sting operation. [D.E. 30]. As a result of

---

[1] On January 21, 2024, the Honorable Beth Bloom referred Defendant's Motion to Reduce Sentence to the undersigned Magistrate Judge for disposition. [D.E. 106].

1

this arrest and operation, the Defendant entered into a plea agreement, through which he agreed to plead guilty to Count 5 of the Superseding indictment, charging the Defendant with possessing a firearm in furtherance of a crime of violence and a drug trafficking crime. [D.E. 30]. He was sentenced to a term of imprisonment of 327 months followed by four years of supervised release, a special assessment of $100, and restitution in the amount of $148,110.63. Defendant moved to vacate his conviction twice [D.E. 40, 71], but both motions were denied. [D.E. 47, 89].

In his current Motion for Sentence Reduction, Defendant argues that three extraordinary and compelling reasons warrant a reduction in his sentence. [D.E. 93]. Defendant first points to his family circumstances; particularly, his ability to be the only caregiver to his stepfather, Edward Heflin-El. Second, Defendant points to his rehabilitation following his conviction. Lastly, Defendant points to the harsh conditions of his confinement.

In response, the Government argues that the Defendant has failed to meet the standards for extraordinary and compelling circumstances for release. [D.E. 96]. Moreover, the Government argues that even if the Defendant had met these standards, which they do not concede that he has, the Defendant still would not be a candidate for compassionate release because (1) his release would be inconsistent with the sentencing factors of 18 U.S.C. § 3553(a) and (2) the defendant's prison record does not establish that he will not pose a danger to the community.

## II.     LEGAL STANDARD

Ordinarily, "a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). In the limited instances when a district court does have the authority to modify a term of imprisonment, that authority "is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010). Therefore, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)).

Pursuant to 18 U.S.C. § 3582, a district court may modify a defendant's imprisonment sentence when "the director of the Bureau of Prisons," or "the defendant after the defendant has fully exhausted all administrative rights . . ." moves for sentence reduction. 18 U.S.C. § 3582(c)(1)(A). In a motion brought by the defendant, the defendant bears the burden of demonstrating that the requisite factors exist to make compassionate release warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

In addition to demonstrating the threshold issue of administrative exhaustion, the district court still may only modify the imposed term of imprisonment if additional requirements are met. *See* 18 U.S.C. § 3582(c). As relevant here, the court "may reduce a sentence" when the court finds that there are "(i) extraordinary and compelling reasons [to] warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

3

Additionally, § 3582(c) requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Specifically, the Eleventh Circuit has held that the relevant Sentencing Commission policy statement, § 1B1.13, is a "binding policy statement for all Section 3582(c)(1)(A) motions." *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).

The Sentencing Commission's binding policy statement has determined what qualifies as extraordinary and compelling reasons. *See* U.S.S.G. § 1B1.13 (effective Nov. 1, 2023). Under the updated policy statement, one extraordinary and compelling reason is "the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). Additionally, subparagraph (b)(3)(D) extends subparagraphs (b)(3)(C) when a defendant can establish similar circumstances "to those listed . . . [that] involv[e] any other immediate family member or an individual whose relationship is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual." U.S.S.G. § 1B1.13(b)(3)(D). In addition to the family circumstances of the defendant, other extraordinary and compelling reasons include the medical circumstances of the defendant, the age of the defendant, being a victim of abuse, serving an unusually long sentence, or "other reasons" that are "similar in gravity" to those described above. *See* U.S.S.G. § 1B1.13(b)(1).

Further, if a district court does determine that extraordinary and compelling circumstances do exist, the district court still must consider 18 U.S.C. § 3553(a)

4

factors. *Id.* Therefore, a court (1) must apply §1B1.131 when determining whether a defendant has demonstrated that extraordinary and compelling circumstances exist, (2) find that the defendant has exhausted their administrative remedies with the Bureau of Prisons, (3) consider the relevant § 3553(a) factors, and (4) determine that the defendant will not pose a danger to the community.

### III.   ANALYSIS

#### A. *Exhaustion of Administrative Remedies*

As a threshold matter, the Court recognizes that the Defendant has satisfied the administrative exhaustion inquiry of the compassionate release analysis, and the Government does not dispute that the exhaustion requirement has been satisfied. [D.E. 96].

#### B. *Extraordinary and Compelling Circumstances*

Defendant argues that (1) his family circumstances, (2) rehabilitation, and (3) harsh conditions of confinement are extraordinary and compelling circumstances that warrant his compassionate release. The Court will address each of these arguments in turn.

##### 1. *Defendant's Family Circumstances*

Defendant's main contention for compassionate release is that his family circumstances, specifically the current medical state of his mother's husband, Mr. Heflin-El, rise to the level of extraordinary and compelling circumstances. [D.E. 93]. A claim of this kind under U.S.S.G. § 1B1.13 must demonstrate that (1) Edward Heflin-El is medically incapacitated, (2) Mr. Heflin-El and the Defendant have a

5

relationship that is similar in kind to that of a parent, and (3) Defendant is the only person available to care for Mr. Heflin-El.

Courts have often looked to Bureau of Prisons Statement § 5050.50 for guidance on what incapacitation means. *See United States v. Bolden*, No. CR16-320-RSM, 2020 WL 4286820, at *4-5 (W.D. Wash. July 27, 2020); *see also United States v. Doolittle*, No. 19-501(SRC), 2020 WL 4188160 (D. N. J. July 21, 2020). According to the program statement, incapacitation is a "serious injury, or a debilitating physical illness . . . [which renders that person] completely disabled, meaning [that the person] . . . cannot carry on any self-care and is totally confined to a bed or chair." 28 C.F.R. § 5050.50.[2]  Further, these claims should be supported by medical records, letters, and/ or other documentation. *Id.*

The letters and medical records before the Court do show that Mr. Heflin-El has several medical issues and is currently awaiting a kidney transplant. Yet, whether Mr. Heflin-El is incapacitated by the standard explained above is a close call. Mr. Heflin-El's veterans affairs statement, hospital discharge instructions, kidney transplant registration, and the family letters do demonstrate his deteriorating health condition, but no verifiable medical documentation seems to indicate that Mr. Heflin-El is incapable of self-care. *See United States v. Azama*, No. 2:22-cr-00060-GMN-NJK-1, 2024 WL 81384, at *2 (denying defendant's motion for compassionate

---

[2] Although this program statement defines incapacitation only in regard to a caregiver of a minor child and in regard to a spouse or registered partner, it still serves as guidance as to what incapacitation means for a parent or relationship of that kind.

6

release in part because the defendant failed to provide the court with "an *objective* medical diagnosis that Defendant's mother could not be left alone" in support of his extraordinary and compelling circumstances contention). Ultimately, regardless of whether Mr. Heflin-El is incapacitated in the way that 18 U.S.C. § 3582 and U.S.S.G §1B1.13 contemplate, the Defendant's claim still fails for the reasons further explained below.

We find that Mr. Heflin-El and Defendant's relationship is not "similar in kind" to that of a parent in the way the statutory framework and supporting Sentencing Commission policy statement envisions. The Sentencing Commission's policy statement only goes as far as directly mentioning parents, children, and spouses, and other potential immediate family members like grandchildren, grandparents, and siblings. U.S.S.G §1B1.13(b)(3)(A)-(D). Beyond this guidance, both the statute and policy statement are silent on what can be seen as a relationship that is similar in kind to that of an immediate family member.

While the Government argues that a parent is someone "who brings forth offspring," or "brings up and cares for one another," [D.E. 96] Defendant urges this Court to consider a broader definition that would encompass the relationship between Mr. Heflin-El and Defendant. In Defendant's Reply to the Government's Opposition [D.E. 100], Defendant attempts to clarify that Defendant's mother and Mr. Heflin-El have been in a relationship since 2010 and married since 2016, and therefore a relationship developed "well before" Defendant was arrested. *Id.* Both the Reply and Motion for Sentence Reduction also state that Defendant and Mr. Heflin-El have been

7

in close communication since Defendant's incarceration. But, Defendant was arrested in July of 2011 shortly after being reunited with his biological father, was well into his thirties at the time of his arrest, and has been incarcerated since. It is thus unlikely that a parent-like relationship has arisen between the two due to the relatively short duration of their relationship and the time at which Mr. Heflin-El entered Defendant's life. While it is quite possible that Defendant has developed some form of a relationship with Mr. Heflin-El since his incarceration, and while a relationship between a stepfather and stepchild can rise to the level of being "similar in kind" to that of a parent, the relationship here does not seem to be "similar in kind" to that of a parent and child.

Last, Defendant is not the only available caretaker for Mr. Heflin-El. Mr. Heflin-El has a wife, daughter, step-daughter, and step-granddaughter. While the letters attached to Defendant's Motion communicate various other commitments that make taking care of Mr. Heflin-El inconvenient or inopportune, that is not the standard that section §1B1.13(b)(3)(D) requires. The framework requires that the defendant establish that they "would be the *only available* caregiver for such family member or individual." §1B1.13(b)(3)(D) (emphasis added). While we are sympathetic to the notion that it can be difficult to care for loved ones and continue with life's normal obligations, being inconvenienced does not disqualify the Defendant's family members from being available caregivers; thus, defendant is not the only available caregiver for Mr. Heflin-El. *See United States v. McBriarty*, No. 3:16-cr-109 (SRU), 2021 WL 1648479, at *8 (D. Conn. Apr. 27, 2021) (denying

defendant's motion for sentence reduction to care for defendant's mother because his siblings were "still 'available,'" even though they were all dealing with their "own issues" because being the "best caretaker" did not meet the extraordinary and compelling requisite); *United States v. Nishida*, No. 19-00025, 2023 WL 7222875, at *3 (D. Haw. Nov. 12, 2023) (denying motion for compassionate release and commenting that his sibling's work responsibilities did not make them unavailable, and that the defendant did not explain whether "friends in the community, or relatives other than his siblings and father would have the time, money, and resources to help with his mother's care."). For all these reasons, Defendant's family circumstances are not extraordinary and compelling.

### *2. Rehabilitation*

Second, the Defendant argues that his rehabilitation post-confinement warrants compassionate release. While the Sentencing Commission's policy statement does allow for the consideration of rehabilitation, it allows the consideration only in "combination with other circumstances." U.S.S.G §1B1.131. To the extent that the Defendant is arguing that his rehabilitation is an extraordinary and compelling circumstance that justifies his release, §1B1.131(b) explains what can be considered as extraordinary and compelling, and it does not explicitly list rehabilitation as a factor that can be considered.

Further, although §1B1.131(b)(5) lists "other reasons" as another consideration, these reasons must be "similar in gravity" to those described in the other paragraphs of this policy statement. While Defendant's efforts at rehabilitation

9

are admirable, rehabilitation is not the kind of reason that is similar in gravity to "scenarios [that] fall[] outside the experience of nearly all federal inmates, such as a terminal medical condition[s], [a] dire family emergency, or [being] abused at the hand of a custodian." *United States v Carter*, No. 03-374-1, 2024 WL 136777, at *9 (E.D. Penn. Jan. 12, 2024); *see also United States v. Mann*, No. 6: 04-031-DCR-1, 2024 WL 666324, at *6 (E.D. Ky. Feb. 16, 2024) ("achievements in therapy and skills development programs are commendable, but they do not amount to an extraordinarily and compelling circumstance, even when considered in combination with other reasons that the defendant believes warrant a reduced sentence.").[3]

---

[3] Before the November 2023 1B1.13 amendments, the Eleventh Circuit held that only the Bureau of Prisons was authorized to determine whether "'other reasons' existed," not the district courts. *Bryant*, 996 F.3d at 1248. Therefore, district courts within the Eleventh Circuit often refused to consider rehabilitation as an "other reason" because it was beyond their discretion. *See United States v. Holley*, No. 5:96-CR-00208-SLB-SGC-1, 2021 WL 2867032, at *2 (N.D. Ala. July 8, 2021) (denying defendant's motion for compassionate release that was based on his rehabilitation, and the threat of covid-19, among other factors because "pursuant to binding Eleventh Circuit precedent set forth in *United States v. Bryant* []. . . his proffered reasons for release did not fall within the extraordinary and compelling reasons delineated by the policy statement in U.S.S.G. §1B1.131 that governs motions under Section 3582(c)(1)(A).") (internal citations omitted). On the other hand, other courts since the implementation of the amendments have found that this updated "catch-all provision allows[s] the Court discretion over what may qualify as extraordinary and compelling." *United States v. Jackson-bey*, No. 2:09-CR-43-4-TLS-PRC, 2024 WL 472449, at*2 (N.D. Ind. Feb. 7, 2024) (quoting *United States v. Beres*, No. CR 16-58, 2023 WL 8809320, at *2 (D. Mont. Dec. 20, 2023). Given that the policy statement removed the "as determined" by the BOP language from "other reasons" section in the current §1B1.13(b)(5) section, and because the Eleventh Circuit has not had occasion to comment on the new amendment updates, and few courts in general have had the opportunity to analyze this new provision, we should consider the "other reason" argument presented by the defendant.

10

If instead the Defendant is arguing his rehabilitation is an additional factor to consider on top of his alleged extraordinary and compelling circumstances, Defendant has not otherwise established extraordinary and compelling circumstances in his motion to consider his rehabilitation with; thus, his rehabilitation argument is immaterial because rehabilitation alone is not a factor that can be considered for compassionate release. *See United States v. Bryant*, No. 16-20188-CR-Scola, 2024 WL 663955, at *3 (S. D. Fla. Feb. 16, 2024) (denying motion for compassionate release in part where defendant argued his rehabilitative efforts warranted his release because rehabilitation alone cannot warrant compassionate release, and defendant's other arguments failed); *see Mann*, 2024 WL 666324, at *6 (denying motion for compassionate release for lack of extraordinary and compelling circumstances because although the defendant's rehabilitative efforts "were commendable, [they] did] not amount to an extraordinarily and compelling circumstance, even when considered in combination with other reasons that the defendant believes warrant a reduced sentence.").

### 3. *Harsh Conditions of Confinement*

As mentioned above, in November of 2023, the Sentencing Commission's amended U.S.S.G. § 1B1.131 went into effect. Prior to these amendments, the Eleventh Circuit cabined the discretion of district courts by holding that only the Bureau of Prisons was authorized to determine whether "'other reasons' existed" for an extraordinary and compelling circumstance claim. *Bryant*, 996 F.3d at 1248. Therefore, because the Bureau of Prisons had not decided that "compassionate

11

release due to unexpectedly harsh conditions of confinement" qualified as an "other reason," a district court would be without discretion to find that it is an extraordinary and compelling circumstance warranting release for the defendant. *United States v. Robinson,* No. 2:17cr33-MHT, 2022 WL 534767, at *1 (M.D. Ala. Feb. 22, 2022). *Bryant,* however, was decided while the 2021 policy statement was in effect, which had an "other reasons" provision that stated: "Other Reasons.—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." §1B1.131(1)(D) (2021). Comparatively, the November 2023 policy statement removed this "as determined" language, and instead states: "Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." §1B1.131(b)(5) (2023).

Despite the removal of the "as determined" language in the updated §1B1.13(b)(6) version, some district courts within the Eleventh Circuit continue to apply the §1B1.13(1)(D) standard enunciated by *Bryant*. *See United States v. Allen*, No. 1:09-cr-320-TCB, 2024 WL 631609, at *3 n.2 (N.D. Ga. Feb. 12, 2024) (acknowledging the November 2023 updates, but still stating that "[t]he Eleventh Circuit has clarified that district courts lack discretion to develop "other reasons" that might justify a reduction in a defendant's sentence," and therefore the district court was without discretion to consider other reasons that might fall into this catch-all

provision).  But, the Eleventh Circuit has not had occasion to comment on the new amendment updates.  Thus, because Section §1B1.13(b)(5) no longer contains the "as determined" by the BOP language in this "other reasons" section, and because few district courts in general have had the opportunity to analyze this new provision, the Court will consider the "other reason" argument related to the harsh conditions of confinement on the merits.  Regardless of whether the Court dismisses this "other reasons" argument at the outset based on *Bryant's* holding or if the Court does consider the argument on the merits, the argument still fails for the reasons discussed further below.

Defendant also asserts that he has experienced harsher conditions of confinement than the Court could have anticipated at the time of sentencing because of the Covid-19 pandemic.  [D.E. 93].  He argues that experiencing the pandemic in prison qualifies as an "other reason" for his alleged extraordinary and compelling circumstances under §1B1.131(b)(5).  While the pandemic did create difficult circumstances for everyone, this argument has not been recognized by courts as an extraordinary and compelling circumstance. *See United States v. Castillo*, No. 12-cr-230-3, 2024 WL 453608, at *4 (E.D. Pa. Feb. 6, 2024) (harsh conditions of confinement because of the impact of COVID-19 . . . "do not give rise to 'extraordinary and compelling reasons' for sentence reduction under compassionate release); *see also United States v. Alvarez*, No. 14-cr-90110-BLOOM, 2022 WL 16856250, at *6 (S.D. Fla. Nov. 10, 2022) ("[d]efendant provides no authority, nor has the Court found any, to support relief [for unpleasant living conditions] pursuant to § 3582."); *United States*

13

*v. Jaha*, No. CR 21-76-GF-BMM, at *3 (D. Mont. Jan. 16, 2024) (harsh conditions related to the pandemic "fail to rise, however, to the level of extraordinary and compelling circumstances); *United States v. Herandez-Hernandez*, No. CR21-32RSM, 2023 WL 5977159 at *3 (D. Or. Jan. 11, 2024) ("[G]eneral conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release.)".

Defendant, therefore, has failed to prove any extraordinary and compelling reasons warranting his release for three reasons. First, Defendant has failed to demonstrate that his family circumstances are extraordinary and compelling because Mr. Heflin-El is not incapacitated, Mr. Heflin-El does not have a parent-like relationship with the Defendant, and Defendant is not the only available caregiver for Mr. Heflin-El. Second, Defendant's rehabilitative efforts are not extraordinary and compelling reasons for compassion release on their own and cannot be coupled with any other extraordinary and compelling circumstances to warrant granting Defendant's compassionate release. Last, the Defendant's claims about the harsh conditions of confinement are not "other reasons" that are extraordinary and compelling either. As such, this Court finds the Defendant has not demonstrated any extraordinary and compelling circumstances. Therefore, Defendant has failed to carry his burden in establishing that he qualifies for compassionate release.

C. *§ 3553(a) factors*

Although this Court has already determined that Defendant has not presented an extraordinary and compelling reason warranting his compassionate release, thus

rendering an analysis of the § 3553(a) factors moot, for purposes of addressing the statutory framework in its entirety, the Court next considers the applicability of these factors to Defendant.

Section 1B1.13(a) directs courts to also consider the factors set forth in 18 U.S.C. § 3553(a) when determining if a defendant should be granted compassionate release. § 3553(a) lists, among other things, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed." 18 U.S.C. § 3553(a)(1)-(2). Moreover, § 3553(a)(2) emphasizes the need to consider "adequate deterrence to criminal conduct," a "reflect[ion] of the seriousness of the offense," "protect[ion] [for] the public from further crimes of the defendant," and "provid[ing] just punishment for the offense."

As the Government correctly points out, Defendant was convicted of a very serious offense, despite Defendant's attempt to characterize his participation as a getaway driver, who was merely roped into his father's criminal activities. Defendant pleaded guilty to knowingly carrying a firearm in connection with a crime of violence and a drug trafficking crime. [D.E. 31]. This offense resulted in the death of his co-conspirators and involved several firearms, flex cuffs, and masks. Moreover, the armed robbery that led to Defendant's arrest was one in a string of at least four armed robberies, all of which resulted in several victims being severely injured. So, although Defendant is now trying to recharacterize the crime that lead to his arrest as one that he was "misguided" into [D.E. 93], it is clear from the stipulated facts of the factual

15

proffer and plea agreement that this was a very serious crime that the Defendant actively and knowingly participated in.

As such, a very serious crime carries with it a heavy sentence to reflect the seriousness of the crime, adequately deter such criminal conduct, and provide a just punishment for the offense. The seriousness of this offense, along with the above-mentioned goals of the statute and policy statement, counsel against compassionate release. *See United States v. Spivey*, 471 F. Supp. 3d. 621, 624-25 (E.D. Pa. 2020) (denying defendant's motion for compassionate release where underlying conviction was a string of robberies because despite defendant's rehabilitation efforts, "[t]he full sentence imposed by the judgement in this case is necessary to protect the safety of the community . . . to reflect the seriousness of the underlying crime . . . and in light of both the violence surrounding Defendant's underlying crime and his history with the criminal justice system.").

Further, as to Defendant's history and characteristics, Defendant has a criminal history that put him in the category of a "career offender" at the time of his sentencing. [D.E. 31]. Both the agreed upon facts in the factual proffer [D.E. 31] and the presentence investigation report [D.E. 104-1] detail a lengthy criminal history. While Defendant tries to dismiss this history as one that occurred while in the Defendant's "youth," with his scorable offenses coming from offenses that occurred "between the ages of 18-27," [D.E. 93], this does not diminish the lengthy history that the presentence investigation demonstrates. [D.E. D.E. 104-1]. Defendant's criminal history started at the age of 13 and continued unabated to his most recent arrest at

16

the age of 33. [D.E. 104-1]. Thus, Defendant's history and characteristics also do not counsel in favor of compassionate release. *See United States v. Gray,* No. 22-11963, 2023 WL 1836789, at *3 (11th Cir. Feb. 9, 2023) (affirming district court's dismissal of motion for compassionate release where § 3553(a) factors counseled against granting the motion because an "early release would not reflect the seriousness of his offense, promote respect for the law, or afford adequate deterrence considering his present offense of armed robbery and his criminal history designating him as a career offender.").

Similarly, although the Defendant argues he has served a large portion of the low end of the guideline range (262 months), this 327 month sentence was necessary to reflect the goals of the statute mentioned above, and releasing defendant early given the criminal history and circumstances surrounding his most recent offense would "undermine the intended purpose of deterring future criminal conduct." *United States v. Haynes*, No. 1:18-cr-00058-RMB, 2023 WL 5287806, at *4 (D.N.J. Aug. 16, 2023) (stating that letting a defendant serve only 64 months out of his 100 month sentence would undermine the statute and "pose[] a threat to the public" where the underlying offense was possession of a loaded and defaced weapon and the defendant had a lengthy criminal history."); *see also United States v. Kennedy*, No. 16-CR-20465, 2021 WL 2525434, at *2 (E.D. Mich. June 21, 2021) ("Defendant has served just over half of his [84 month] sentence to date. Releasing defendant now would undermine the purposes of the above-referenced § 3553(a) factors.").

### D. *Defendant's Danger to the Community*

Based on the preceding discussion, Defendant's dangerousness and use of violence associated with the convicting offense, plus his history of recidivism as shown by Defendant's repeated contacts with the criminal justice system, the record as a whole indicates that he would remain a danger to the community if released. *See United States v. Noesi*, No. 20-12827, 2021 WL 3754592, at *3 (11th Cir. Aug. 25, 2021) ("being a danger to the community is fatal to a compassionate release motion . . . ."); *see also United States v. Young*, No. 06-710-02, 2020 WL 4925592, at *3 (E.D. Pa. Aug. 21, 2020) (denying defendant's motion for compassionate release because even if the defendant's needed medical care weighed in favor of release, the violence associated with the underlying robbery, history of recidivism, and criminal history "weigh[ed] against granting the motion because the sentencing goals of just punishment, deterrence, and protecting the public would be undermined by [defendant's] release."). That finding reenforces that his pending motion should be Denied.

### IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motion For Sentence Reduction be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual

18

or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 28th day of February, 2024.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge